**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|                                      |   |                         |
|--------------------------------------|---|-------------------------|
| CHARLES CHRISTOPHER FONCK III,       | : |                         |
|                                      | : | No. 3:18-cv-1283 (KAD)  |
|     Plaintiff,   | : |                         |
|                                      | : |                         |
|     v.           | : |                         |
|                                      | : |                         |
| SEMPLE, et al.,                      | : |                         |
|     Defendants.  | : |                         |

**INITIAL REVIEW ORDER**

Preliminary Statement

Plaintiff, Charles Christopher Fonck III ("Fonck"), currently confined at Osborn Correctional Institution in Somers, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 challenging his classification. The named defendants are Commissioner Scott Semple, Director of Offender Classification and Population Management David Maiga, Counselor Supervisor Erika Tugie, Warden Gary Wright, Correctional Officer Hubbard, Counselor Lugo and Correctional Officer Richardson. Fonck seeks damages as well as declaratory and injunctive relief. The complaint was received on August 2, 2018, and Fonck's motion to proceed *in forma pauperis* was granted on August 8, 2018. Fonck also has filed a motion for preliminary injunction or temporary restraining order.

Standard of Review

Pursuant to 28 U.S.C. § 1915A, where a prisoner seeks to proceed *in forma pauperis,* the Court must review the prisoner's civil complaint and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks

monetary relief from a defendant who is immune from such relief. *Id.* A complaint must include a "plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Even a case which appears highly unlikely to succeed, may not be frivolous and should not be dismissed by way of the §1915A review. *See, Nietzke v. Williams,* 490 U.S. 319, 329 (1989). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, supra.* 678. Although, it is well-established that pro se complaints must be construed liberally, the complaint is still required to meet the standards of facial plausibility. *See Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009).

<u>Allegations</u>

Fonck is serving a three-year sentence for a non-violent crime. ECF No. 1 at 5, ¶¶ 12-13. Inmates convicted of non-violent crimes are eligible for educational and other programs that would facilitate re-entry into society. *Id.*, ¶ 13. They also are eligible for Risk Reduction Earned Credit ("RREC"), and consideration for parole of community placement. *Id.*, ¶ 14.

Upon entry to Department of Correction ("DOC") custody, inmates are classified based

on both risk and needs scores. *Id.*, ¶ 15. The risk score is determined after considering seven factors: (1) history of escape; (2) severity/violence of current offense; (3) history of violence; (4) length of sentence; (5) presence of pending charges, bond amounts, and/or detainers; (6) disciplinary history; and (7) security risk group membership. *Id.* at 5-6, ¶ 16. The needs score considers seven factors: (1) medical and health care, (2) mental health care, (3) education, (4) vocational training and work skills, (5) substance abuse treatment, (6) sex offender treatment, and (7) community resources. *Id.* at 6, ¶ 17. Departmental directive 9.2 provides that no inmate with a sex offender treatment needs score of 2 or greater can be assigned an overall risk score less than 3 without authorization from the commissioner or his designee. *Id.* ¶ 18. Upon entry into DOC custody, an Offender Accountability Plan is established for each inmate. *Id.* at 6-7, ¶ 20.

On November 23, 2016, Counselor Lugo presented Fonck his Offender Accountability Plan. Correctional Officer Hubbard was present. *Id.* at 7, ¶ 21. The plan included a sex treatment referral. If Fonck did not participate in the required programs, he would forfeit RREC and the opportunity for supervised release or parole. *Id.* ¶ 22; *see also id.* at 128.

Fonck refused to sign the plan, arguing that he had never been convicted of a sexual offense and had no history of being a sex offender. *Id.* ¶ 23. When he questioned the requirement that he participate in a sex offender treatment program, Counselor Lugo stated that he must have had some kind of sex offense. She threatened to make him "pay" if he refused to sign the form and made more work for her. Correctional Officer Hubbard laughed and told Fonck that "we make sure inmates with those kind of charges live comfortably." *Id.* ¶ 24.

A short time later, Counselor Lugo placed a copy of the plan on Fonck's bunk. The

document was facing up and unfolded so other inmates could see it.  *Id.* ¶ 25.  Other inmates called Fonck derogatory names and gang members threatened harm if he did not "pay rent weekly, with commissary items."  *Id.* at 8, ¶ 27.  When Fonck refused to pay, the gang members repeatedly tried to assault him in the bathroom or shower.  *Id.* ¶ 28.

Fonck received a disciplinary report for refusal of an institutional program.  *Id.* ¶ 29.  Correctional Officer Richardson presided at the November 29, 2016 disciplinary hearing.  *Id.* ¶ 30.  Fonck alleges that Correctional Officer Richardson did not permit him to present evidence or speak at the hearing.  *Id.* ¶ 31.  Fonck denies that he was removed from the hearing because he was disruptive as indicated in the Disciplinary Process Summary Report.  Rather he alleges that Correctional Officer Richardson was unwilling to hear him and ordered Fonck to return to his housing unit.  *Id.* at 8-9, ¶¶ 32-33.  Correctional Officer Richardson did not schedule another hearing and did not provide Fonck notice of the findings thereby preventing Fonck from appealing the decision.  *Id.* at 9, ¶ 35.  When Fonck returned to his housing unit, he discovered that his foot locker had been opened and his possessions stolen.  *Id.* ¶ 37.

On December 5, 2016, Correctional Officer Hubbard approached Fonck in the dayroom and used insulting language.  When Correctional Officer Hubbard ordered Fonck to retrieve his ID, Fonck declined.  Correctional Officer Hubbard then told Fonck he would "get you out of here one way or another."  *Id.* at 9-10, ¶ 38.  Correctional Officer Hubbard issued Fonck a disciplinary report for disobeying a direct order to which Fonck pleaded not guilty.  *Id.* at 10, ¶ 39.

The following day, Correctional Officer Rose, who is not a defendant, searched Fonck's cell and discovered two nails.  *Id.* ¶¶ 40-41.  Fonck was found guilty of several charges.  He

spent 21 days in punitive segregation pending a transfer to a higher security level.  *Id.* ¶ 42.

Fonck wrote to Director Maiga regarding his inability to appeal the November disciplinary findings and, what he termed the sex offender classification.  *Id.* at 10-11, ¶ 44. Counselor Supervisor Tugie responded to the letter.  She told Fonck that his classification was based on non-conviction criminal justice information showing a history of problematic sexual behavior; a sexual assault charge was nolled in connection with a 1998 conviction for assault. *Id.* at 11, ¶ 45.  Counselor Tugie also stated that Fonck had not been classified as a sex offender. *Id.* ¶ 46.

Fonck herein avers that the charge was nolled when the purported victim, his girlfriend, recanted the statement in the police report that she was sexually assaulted.  *Id.* at 11-12, ¶ 49. Fonck further alleges that, since the incident, he has had three children with the purported victim and that she visits him regularly.  *Id.* at 12, ¶¶ 51-52.

In February 2018, Fonck submitted an appeal of his classification.  He appended to the letter a petition for erasure of the charge that he had submitted to the state court in 2012, when the same information had been used to classify him in the same way.  The petition was granted on February 7, 2012, with a notation that the nolled charges are erased by operation of law.  *Id*. at 167 & 12, ¶¶ 53-54.  Counselor Tugie denied the appeal, stating that Fonck's sex treatment needs score was established after a non-conviction hearing on October 14, 2012, and that the classification was appropriate and consistent with current correctional policies.  Fonck alleges that he was not incarcerated on the date of the purported hearing and contends that Counselor Tugie did not have authority under correctional directives to respond to the appeal.  *Id.* at 14, ¶¶ 62-63.  Fonck attached, as an exhibit to his complaint, a copy of his movements within the DOC.

The report indicates that Fonck was released to supervised parole on September 18, 2012, and not re-incarcerated on a technical violation of parole until December 10, 2012. *Id.* at 185.

Fonck sent a letter of complaint to Director Maiga. *Id.* at 14, ¶ 65. When he received no response, he filed a grievance. *Id.* ¶ 66. Warden Wright denied the grievance referring to previous responses sent to Fonck. *Id.* at 14-15, ¶¶ 67-68. In May 2018, Fonck wrote to Commissioner Semple about his classification. *Id.* at 15-16, ¶ 72. In June 2018, Warden Wright responded to the letter. The response was the same as previous responses written by Counselor Tugie. *Id.* at 16, ¶ 73. Fonck has made repeated requests for the documents related to the October 15, 2012 non-conviction hearing but no documents have been provided. *Id.* at 16-17, ¶¶ 75-78.

Discussion

Fonck challenges his classification, specifically his sex treatment needs score in that the prior charge was erased and, therefore, cannot be considered in determining his score. He argues that his classification has violated his Fourteenth Amendment rights to due process and equal protection of the laws. He also contends that the more stringent conditions of confinement and lack of programming and RREC violate his Eighth Amendment rights. Finally, Fonck asserts a state law claim for violation of article first, section 9, of the Connecticut Constitution.

Due Process

"[I]t continues to be the case that wrongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest." *Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010). The documents Fonck attaches to his complaint, however, repeatedly state that he has not been classified as a sex offender. ECF No. 1 at 162, 211. Fonck

avers that the distinction made in those documents between classification as a sex offender and classification as an inmate having a sex treatment need due to a known history of problematic sexual behavior is a distinction without a difference.

Like Fonck, the plaintiff in *Vega* challenged his assignment of a sex treatment needs score of "3." *Id.* at 80. He argued that his classification violated his right to due process because he was classified as a sex offender even though he had not been convicted of a sexual offense. He argued that the misclassification "deprived him of a federal constitutional liberty interest in not being falsely stigmatized and a state-created liberty interest in not being labeled as a sex offender absent a criminal conviction." *Id.* The Second Circuit described Vega's claim as a due process violation by defamation. The court noted that, although defamation usually is considered a state-law claim, defamation by government officials may, under certain circumstances, rise to constitutional dimension. *Id.* at 81 (citing *Paul v. Davis*, 424 U.S. 693, 701-10 (1976)). To state a constitutional claim, the plaintiff must "demonstrate 'a stigmatizing [false] statement plus a deprivation of a tangible interest.'" *Id.* (quoting *Algarin v. Town of Wallkill*, 421 F.3d 137, 138 (2d Cir. 2005)).

There are two components to a "stigma plus" claim. First, the plaintiff must establish the "stigma" by demonstrating "the utterance of a statement sufficiently derogatory to injure his or her reputation that is capable of being proved false, and that he or she claims is false." *Id.* (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)). The Second Circuit held that a sex treatment needs score of "3" was sufficiently derogatory to meet the "stigma" prong.[1]

---

[1] The plaintiff in *Vega*, failed to allege that his classification or label of sex offender was false and therefore his due process claim failed.

Second the plaintiff must demonstrate the "plus," "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Id.* The "plus" must be something "in addition to the stigmatizing statement." *Id.* Thus, "'deleterious effects [flowing] directly from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah*, 383 F.3d at 38 (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).

Fonck alleges that the statement is false because all records of the charge were ordered erased in 2012 and, therefore, can no longer be used to support his classification. He also alleges that the statement is factually false as the purported victim recanted the allegation and went on to become the mother of his three children. He further alleges that, as a result of the classification, he has been threatened, extorted and assaulted and that his classification has resulted in forfeiture of RREC as well as the denial of educational programs, parole, and community placement. Finally, Fonck avers that there are no records of a classification hearing ever being conducted and that he was not incarcerated on the date such hearing was purportedly held.

Measuring these allegations against the standard set forth in *Vega*, the Court finds these allegations sufficient to state a plausible due process claim. For the same reason, Fonck's state constitutional claim which raises the same issue shall proceed as well.

Equal Protection

Fonck next asserts that his classification has resulted in a denial of equal protection under the laws. The Equal Protection Clause protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather it requires that similarly situated persons be treated the same. *City of Cleburne v. Cleburne Living Ctr.*, 473

U.S. 432, 439-40 (1985). To state an equal protection claim, Fonck must allege facts demonstrating that he was treated differently from similarly situated individuals and that the reason for the disparate treatment was "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injury a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). An equal protection violation is demonstrated by: "point[ing] to a law or policy that expressly classifies persons on the basis of race"; "identify[ing] a facially neutral law or policy that has been applied in an intentionally discriminatory manner"; or "alleg[ing] that a facially neutral statute or policy has an adverse effect *and* it was motivated by discriminatory animus." *Anderson v. Waterbury Police Dep't*, 2017 WL 1157843, at *9 (D. Conn. Mar. 28, 2017)(quoting *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 337 (2d Cir. 2000)(internal quotation marks omitted, emphasis added).

Fonck challenges the classification procedures, specifically the use of an erased record to set an inmate's sex treatment needs score. However, he does not identify any similarly situated inmates who were treated differently. He does not allege that other inmates who had non-conviction reports of sexual misconduct were classified in a different manner or were given lower sexual treatment needs scores. In addition, Fonck fails to allege that his classification/needs score was the result of the type of impermissible consideration set forth in *Diesel v .Town of Lewisboro*, supra, *i.e.*, race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injury a person. Accordingly, Fonch fails to allege a facially plausible equal protection claim.

<u>Eighth Amendment</u>

Lastly, Fonck alleges that his conditions of confinement, as a result of the classification/needs score, constitute cruel and unusual punishment in violation of the Eighth Amendment. He alleges that he was forced to forfeit RREC, was rendered ineligible for certain educational and job opportunities, and was denied parole and community placement.

A cognizable Eighth Amendment claim based on unconstitutional conditions of confinement, requires allegations of fact which establish "both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the official acted, or omitted to act with a 'sufficiently culpable state of mind,' meaning with a 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A condition is objectively serious if it deprives an inmate of "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (internal quotation marks omitted)). To meet the subjective component, allegations must include that prison officials knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that they were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and … dr[e]w that inference." *Id.* at 185-86.

Fatal to his claim, Fonck fails to allege that he was deprived of any basic human need. He alleges only the deprivation of a series of opportunities or privileges to which he might otherwise have had access. However, inmates have no constitutional right to any of the privileges Fonck claims to have lost. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) (no constitutional right to be released on parole or to other conditional release from prison, prior to expiration of valid sentence); *Moody v. Dagget*, 429 U.S. 78, 88 n.9 (1976)

10

(prisoners have no right to rehabilitative programming); *Victory v. Pataki*, 814 F.3d 47, 59-60 (2d Cir. 2016) (possibility of release for prisoner who has not been granted parole is "mere hope" and not sufficient to warrant constitutional protection); *Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996) (no constitutional right to prison job); *Myers v. Semple*, 2018 WL 3553336, at *7 (D. Conn. July 23, 2018) (inmate has no constitutional right to job or educational opportunities)(citations omitted); *Wright v. Malloy*, 2016 WL 7115933, at *6 (D. Conn. Dec. 6, 2016) (no constitutional right to RREC or parole so denial not Eighth Amendment violation). Accordingly, Fonck fails to allege a facially plausible claim under the Eighth Amendment.

Orders

For the reasons set forth above, Fonck's equal protection and Eighth Amendment claims are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the Fourteenth Amendment due process and state constitutional claims challenging the classification procedures and their application to him.

Along with his complaint, Fonck filed a motion seeking a preliminary injunction or temporary restraining order directing the defendants to purge all records of any reference to him as a sex offender or needing sex offender treatment, not to rely on any erased charges or police reports relating to him having committed a sexual offense in classifying him, and to reduce his overall risk score and sex offender treatment scores accordingly. The defendants shall respond to this motion when they file a responsive pleading.

The Court enters the following additional orders:

(1)    **The Clerk shall** verify the current work addresses of the defendants with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request

packet to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)    **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)    **The Clerk shall** send Fonck a copy of this Order.

(4)    **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)    The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6)    Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If Fonck changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Fonck must give notice of a new address even if he is incarcerated.  Fonck should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Fonck has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  Fonck should also notify the defendant or the attorney for the defendant of his new address.

(10)    Fonck shall utilize the Prisoner Efiling Program when filing documents with the court. Fonck is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11)    The defendants shall respond to the motion for preliminary injunctive relief on or before the 60th day after the waivers are sent.

SO ORDERED at Bridgeport, Connecticut, this    th day of September 2018.

/s/
_____
Kari A. Dooley
United States District Judge

13