UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHARLES CHIRSTOPHER FONCK, III,<br>      Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:18-cv-1283 (KAD) |
| | : | |
| SEMPLE, et al.,<br>      Defendants. | : | |

## MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge

The plaintiff, Charles Christopher Fonck, III ("Fonck"), commenced this civil rights action challenging his risk/need classification. Following initial review, the court dismissed all claims except a Fourteenth Amendment "stigma-plus" due process claim and a state constitutional challenge to the classification procedures both facially and as applied to him. Doc. No. 9. On April 22, 2019, the court granted Fonck's motion to amend permitting him to add an Eighth Amendment claim for deliberate indifference to safety against defendant Lugo. Doc. No. 63. The defendants, Semple, Maiga, Tugie, Wright, Hubbard, Lugo, and Richardson ("the Defendants"), filed a motion for summary judgment on multiple grounds including, that the Plaintiff failed to exhaust his administrative remedies, that Plaintiff has not established a stigma-plus due process claim, and that the Defendants are entitled to qualified immunity.[1] For the following reasons, the motion is GRANTED.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute

---

[1] The Defendants have included arguments addressing claims that were previously dismissed or that Fonck was denied leave to add. The court does not address these arguments.

as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not

overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts[2]**

On November 18, 2016, as a then sentenced prisoner, Fonck was transferred to Carl Robinson Correctional Institution. Decl. of Parole Supervisor Tara Brooks, Defs.' Mem. Ex. G, Doc. No. 129-10 at 19. On December 21, 2016, he was transferred to Cheshire Correctional Institution where he remained until, on January 3, 2018, he was transferred to Osborn Correctional Institution. *Id.* He was released from custody on August 15, 2019. *Id.* The allegations in the Amended Complaint span Fonck's incarceration at all three facilities.

Defendant Maiga is the Director of Offender Classification and Population Management for the Department of Correction. Defs.' Local Rule 56(a)1 Statement, Doc. No. 129-2 ¶ 1. The unit assesses all adult male prisoners sentenced to a term of imprisonment greater than two years. *Id.* ¶ 3. Each inmate undergoes a standard classification process which considers risk factors and needs factors and assigned each factor a numerical score between 1 and 5. *Id.* ¶ 4. These scores

---

[2] The facts are taken from the Defendants' Local Rule 56(a) Statement and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3.

The Defendants informed Fonck of this requirement. *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, Doc. No. 129-3. As Fonck has not opposed the Defendants' motion, the Defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

Although Fonck has not filed any opposition to the motion for summary judgment, his Complaint and Amended Complaint are verified and include multiple exhibits. The court considers the verified complaints as affidavits for summary judgment purposes and also considers Fonck's exhibits to the extent they are properly submitted. *See Curtis v. Cenlar* FSB, 654 F. App'x 17, 20 (2d Cir. 2016) ("Though we may treat [plaintiff's] verified complaint 'as an affidavit for summary judgment purposes,' the allegations contained therein can suffice to defeat summary judgment only insofar as they were made on personal knowledge.") (quoting *Conlon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

are used to develop an Overall Risk Score, again between 1 and 5, which is used to determine the security level of the correctional facility to which the prisoner should be assigned. *Id.* There are seven risk factors and seven needs factors. *Id*. ¶¶ 5-6. At issue in this case is Fonck's sex treatment needs score.

A sex treatment needs score does not designate the inmate as a sex offender or indicate that he requires sex offender treatment. *Id.* ¶¶ 7-8. Rather, the score indicates that the prisoner may require sex offender treatment. *Id.* ¶ 9. When assigning the factor, correctional officials use information from police reports, victim statements, and other documents. *Id*. ¶ 10.

Fonck is assigned a sex treatment needs score of 3. *Id.* ¶ 11. In assigning Fonck's score, correctional officials relied on a police report relating to a 1997 conviction for assault in the third degree. *Id*. ¶ 13. The report included an investigation by police officers and a signed, sworn, written statement by a person alleging that Fonck had sexually assaulted her. *Id*. ¶ 14. Contrary to Fonck's allegations, the police report has never been erased and is not subject to state erasure laws at this time. *Id*. ¶ 15. Using such police reports to determine a sex treatment needs score is permitted under Department of Correction policies and procedures. *Id.* ¶ 16. Fonck's sex treatment needs score has been reviewed with him multiple times since 1997. *Id.* ¶ 17.

Inmates' sex treatment needs scores are not currently published and are available only to a limited number of correctional staff. *Id*. ¶ 18. Correctional officers assigned to inmate housing units do not have access to the scores and, although inmates are aware of their scores, they are not provided documents containing the scores. *Id.*

By Affidavit, Defendant Maiga states that a sex treatment needs score greater than 1 does not adversely affect an inmate, *id.* ¶ 19, and it does not restrict eligibility for a prison job,

4

participation in inmate educational or vocational programming, or other privileges. *Id.* Defendant Maiga further avers that Fonck's sex treatment needs score has not affected his ability to earn Risk Reduction Earned Credit ("RREC") and in fact he received RREC while incarcerated. *Id.* ¶ 20. Defendant Maiga also avers that Fonck's sex treatment needs score has not impacted his eligibility for parole, transitional supervision, or residential program placement. *Id.* ¶¶ 21-22.

Defendant Lugo was a correctional counselor at Carl Robinson Correctional Institution in October 2016. Doc. No. 129-2 ¶ 36. One of her duties was to complete Offender Accountability Plans ("OAP"), documents intended to enable inmates to address their needs and achieve rehabilitation before re-entering the community. *Id.* ¶¶ 38-39. On November 23, 2016, defendant Lugo was scheduled to review Fonck's OAP with him. *Id.* ¶ 41.

In the course of completing the form, defendant Lugo reviewed Fonck's master file, his RT screens which showed his movements within the Department of Correction, and any available police reports. *Id.* ¶ 42. After reviewing the available information, she determined, *inter alia*, that a sex treatment needs score of 3 was appropriate. *Id.* ¶¶ 43, 53. Although she verified the sex treatment needs score as part of her review, defendant Lugo, as a correctional counselor, did not have authority to change the established score. *Id.* ¶ 52.

Defendant Lugo recommended that Fonck address several issues. *Id.* ¶ 46. The OAP only includes referrals for services. *Id.* ¶ 47. As defendant Lugo is not a clinician, she cannot determine whether treatment is needed and, if so, at what level. *Id.* ¶ 48. The OAP is intended to enable the inmate to address issued identified during the review. *Id.* ¶ 49.

After defendant Lugo explained the results of the OAP to Fonck, he refused to sign the

form. *Id.* ¶ 54. Fonck became argumentative and another officer had to enter the office to ensure that Fonck remained calm. *Id.* ¶ 56. Failure to cooperate with the OAP by failing to sign it is sanctionable by a disciplinary charge for failure to cooperate with an institutional program. *Id*. ¶ 55. Defendant Lugo issued Fonck a disciplinary report for failing to sign the OAP. *Id.* ¶ 57.

The OAP form does not include Fonck's sex treatment needs score. *Id.* ¶ 63 & Doc. No. 1 at 128. Defendant Lugo states that she did not give Fonck a copy of the form or place it on his bunk. Doc. No. 129-2 ¶¶ 58-60. Defendant Lugo had no further interaction with Fonck after the November 23, 2016 meeting. *Id.* ¶ 63.

Defendant Richardson was assigned to adjudicate Fonck's disciplinary charge from November 23, 2016. *Id*. ¶ 69. As a disciplinary hearing officer, he had no involvement in Fonck's classification and was unaware of Fonck's classification scores. *Id.* ¶¶ 64-68. Prison directives permit a hearing officer to exclude or eject from a disciplinary hearing any person whose behavior disrupts an orderly hearing or jeopardizes safety and security. *Id.* ¶ 72. At the disciplinary hearing, Fonck admitted that he refused to sign the OAP and the unsigned form was submitted as evidence. *Id*. ¶¶ 70-71. Thereafter, Fonck became argumentative and was removed from the hearing. *Id.* ¶ 74. Whether Fonck was present for the entire hearing did not affect the outcome as he already had admitted to the charge of refusing to sign the OAP. *Id.* ¶ 75. At the conclusion of the hearing, defendant Richardson completed the hearing summary and gave it to correctional staff to be delivered to Fonck. *Id*. ¶ 76.

Defendant Hubbard worked as a correctional officer at Carl Robinson Correctional Institution between August and December 2016. *Id.* ¶ 97. As a unit officer, defendant Hubbard

6

did not have access to inmate needs scores, did not conduct classification assessments, and did not have authority to change an inmate's needs score. *Id.* ¶¶ 89-96.

Defendant Tugie has worked in the Offender Classification and Population Management unit since 2015. *Id.* ¶ 149. In January 2018, in response to a letter from Fonck, defendant Tugie was asked to investigate Fonck's complaint. *Id*. ¶ 159. The investigation involved reviewing Fonck's classification. *Id.* ¶ 160. Defendant Tugie reviewed the Department of Correction RT screens, Fonck's state "rap sheet," and relevant police reports. *Id.* ¶ 161. The police report she reviewed contained a signed, sworn statement that Fonck had forced sexual contact with another person. *Id*. ¶¶ 162, 166. Fonck's previous sex treatment needs score was 3. *Id*. ¶¶ 164-65. Defendant Tugie was not permitted to ignore that score in her review. *Id*. ¶ 163. The police report was not erased when defendant Tugie conducted her review and is not now subject to state erasure laws. *Id*. ¶ 167. At the time of the review, Fonck's sex treatment needs score appeared to be supported by the information available to defendant Tugie. *Id.* ¶ 169.

Fonck's needs score has been reviewed with him on multiple occasions. *Id.* ¶ 171. The last OAP included a referral for evaluation to determine whether any sex treatment programming was needed. *Id.* ¶ 173. If he had signed the OAP, Fonck would have been referred to a clinician for that determination. *Id.* ¶ 174. As he did not sign the OAP, Fonck was not evaluated and no treatment was recommended or undertaken. *Id*. ¶ 175.

Defendant Wright served as a warden of Osborn Correctional Institution from March 2018 through March 2019. *Id.* ¶ 23. In that capacity, he oversaw operations of the correctional facility but was not involved in matters such as classification which was delegated to the Office of Offender Classification and Population Management. *Id.* ¶¶ 24-25. As warden, defendant

Wright did not have authority to make specific classification decisions. *Id*. ¶ 34.

In June 2018, in his capacity as warden, defendant Wright received a grievance from Fonck. *Id*. ¶¶ 26, 28. Although Fonck identified the subject of the grievance as classification, his complaint was a lack of due process. *Id*. ¶ 29. Defendant Wright denied the grievance as untimely because Fonck failed to appeal the issue within thirty days. *Id.* ¶ 30. The grievance appeal was denied on the same ground. *Id*. ¶ 33.

Defendant Semple is a former Commissioner of Correction. *Id*. ¶ 78. Although generally aware of the classification process, he was not a member of the classification committee and did not review any decisions regarding Fonck's sex treatment needs score. *Id.* ¶¶ 79-81. Classification responsibilities were delegated to the Office of Offender Classification and Population Management. *Id.* ¶ 80. Defendant Semple denies being made aware that classification procedures were not being conducted in accordance with law and department policy. *Id.* ¶ 86.

Chad Green maintains grievances filed by inmates at Cheshire Correctional Institution. Doc. No. 129-2 ¶ 101. At the request of the Office of the Attorney General, Green was asked to locate all non-medical grievances filed by Fonck between December 20, 2016, and January 30, 2018. *Id.* ¶ 104, the entire period of time that Fonck was held at Cheshire Correctional Institution. By Affidavit, Green avers that he did not locate any record of grievances about a due process failure regarding defendant Lugo and Fonck's OAP or defendant Lugo's behavior as a correctional counselor, *id*. ¶¶ 105-06; defendant Maiga's behavior or classification decisions regarding Fonck. *id*. ¶ 107; defendant Hubbard's behavior, *id*. ¶ 108; or defendant Tugie's behavior as a counselor supervisor, *id*. ¶ 109.

Correctional Counselor Soley, the keeper of grievances at Carl Robinson Correctional Institution, was asked to locate all non-medical grievances Fonck filed at that facility from November 1, 2016 to December 30, 2016. *Id.* ¶¶ 110, 113, the entire time period Fonck was held at Carl Robinson Correctional Institution. Soley states that he did not locate any grievances about a due process failure regarding defendant Lugo and Fonck's OAP or defendant Lugo's behavior as a correctional counselor, *id.* ¶¶ 114-15; defendant Maiga's behavior or classification decisions regarding Fonck. *id.* ¶ 117; defendant Hubbard's behavior, *id.* ¶ 118; or defendant Tugie's behavior as a counselor supervisor, *id.* ¶ 116.

Correctional Officer Moore, the keeper of grievances at Osborn Correctional Institution, was asked to locate all non-medical grievances Fonck filed at that facility from January 3, 2018, the date Fonck was transferred there, to August 2, 2018. *Id.* ¶¶ 208. 211. Officer Moore located a grievance asserting a violation of due process that was rejected as untimely filed both on initial review and level 2 appeal. *Id.* ¶ 213.[3]

**Discussion**

The remaining claims in this case are a stigma-plus due process claim based on Fonck's assigned sex treatment needs score, a claim for deliberate indifferent to safety against defendant Lugo, and a state constitutional challenge to the classification procedures both facially and as applied. The due process claim is premised on the fact that Fonck did not receive a hearing upon re-admission to the DOC in 2016 to contest the then-existing sex treatment needs score. He

---

[3] The Defendants state that Officer Moore was unable to locate any grievances regarding defendants Tugie, Doc. No. 129-2 ¶ 214; Maiga, *id.* ¶ 215; or Wright, *id.* ¶¶ 216-17. These statements are not deemed admitted as the Defendants cite no admissible evidence supporting the absence of these grievances. *See* D. Conn. L. Civ. P. 56(a)3 ("Each statement of material fact by a movant in a Local Rule 56(a)1 Statement … must be followed by a specific citation….").

asserts that the information relied upon was false, that the alleged victim of the sexual assault had recanted, that the police report had been erased as a matter of law and that he was denied the opportunity to present evidence in this regard because no hearing was conducted with respect to his sex treatment needs upon his re-admission. He further asserts that the sex treatment needs score has stigmatized him and caused him tangible injury rendering his claims viable under the Fourteenth Amendment. The Defendants move for summary judgment on seven grounds: (1) Fonck's claim is time-barred, (2) Fonck failed to exhaust his administrative remedies before commencing this action, (3) Fonck fails to state a claim upon which relief may be granted; (4) the Defendants are protected by qualified immunity, (5) Fonck has failed to demonstrate a physical injury as required under the Prison Litigation Reform Act, (6) there is no private right of action under the Connecticut Constitution, and (7) Fonck does not meet the requirements for compensatory damages.

**Exhaustion of Administrative Remedies**

In his Amended Complaint Fonck cites to the DOC manual that provides that that an initial classification shall be performed each time an inmate is newly admitted to the Department of Correction. Doc. No. 45-1 ¶ 31. Fonck was readmitted to custody in 2016. As noted, his stigma-plus due process claim is based on assigning him a sex treatment needs score of 3 upon his admission in 2016 without a hearing to enable him to challenge the basis for the classification.

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6. *See* Administrative Directive 9.6, Inmate Administrative Remedies (revised August 15, 2013), available at http://portal.ct.gov/-/media/DOC/Pdf/Ad/ad0906pdf.pdf. The type of remedy available to an inmate depends on the nature of the issue or condition complained of or the decision made by correctional personnel. Appeals of classification decisions are governed by Section 9.6(7). Needs level decisions are appealed by depositing Administrative Remedy Form CN 9602 in the Administrative Remedies box within fifteen calendar days from the decision regarding the needs level. Administrative Directive 9.6(7)(B). The appeal will be decided by the Unit Administrator if the decision was

made by facility staff or by the Director of Offender Classification and Population Management if the decision was made by the Offender Classification and Population Management Unit. Administrative Directive 9.6(7). The decision is not subject to further appeal. *Id.*

In advancing this argument, the Defendants rely upon the grievance procedures for grievances regarding conditions of confinement and the like, rather than the procedures applicable to classification decisions, and argue that Fonck failed to timely file a level 2 grievance appeal on this issue. These requirements were not applicable to Fonck's classification appeal. But that does not end the inquiry.

Fonck's due process claim is premised on the allegation that he was given a sex treatment needs score of 3 when he was re-admitted to the DOC in the Fall of 2016. The inclusion of a sex offender treatment evaluation (and treatment if recommended) is the basis upon which he refused to sign his OAP in November 2016.[4] But Fonck did not seek to address his needs score until January 2018, when he wrote the letter to the Director of Offender Classification and Population Management asking that his sex treatment needs score be lowered. By letter dated January 23, 2018, defendant Tugie responded to Fonck's inquiry. She reported the basis of the score and stated that the score would not be changed. Defs.' Mem. Ex. P., Doc. No. 129-19 at 2. It was only then that Fonck submitted Administrative Remedy Form CN 9602 challenging the classification decision. The form references Administrative Directive 9.6(7) and addressed the use of non-conviction information in assigning his sex treatment needs score. The form is dated February 3, 2018. *Id.* at 3-4. Defendant Tugie denied the request on March 1, 2018. *Id.* at 3. Defendant Tugie checked the box on the form indicating that Fonck had exhausted his

---

[4] Fonck further concedes that he was aware of his sex treatment needs score during his prior periods of incarceration.

administrative remedies. *Id.*

However, this "stigma plus" due process claim does not arise out of Tugie's refusal to lower the score in January 2018, (a decision for which Fonck may well have exhausted his administrative remedies). This claim, as outlined in the complaint, arises out of the assigning of the score without a hearing in 2016 upon his re-admission to the DOC. Again, he asserts that the failure to afford him a hearing at which he could contest the basis for the sex treatment needs score resulted in his stigmatization as a sex offender. And although he knew of the score, both prior to and certainly no later than his receipt and review of the OAP, he did not file any timely appeal of the classification decision. Indeed, he did not take any action to have the score lowered until well over a year later. Fonck's January 2018 letter does not reset the clock on the limitations period for filing an appeal of the classification made in 2016. Accordingly, Fonck did not exhaust his administrative remedies with respect to his stigma plus due process claim. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules").

In the Amended Complaint, Fonck was permitted to add an Eighth Amendment claim for deliberate indifference to safety against defendant Lugo for placing the OAP on his bunk following the November 23, 2016 meeting so other inmates would see it and would conclude that Fonck was a sex offender, thereby placing Fonck in danger. Although he attaches many grievance forms to his Amended Complaint, Fonck does not attach any grievance regarding this claim against Defendant Lugo. To the contrary, the Defendants have submitted declarations from grievance coordinators at the facilities in which Fonck was confined in 2016 stating they

have no record of any grievances regarding defendant Lugo's behavior. Fonck did not oppose the motion for summary judgment and so offered no evidence that he exhausted his administrative remedies on this claim. Defendant Lugo's motion for summary judgment is granted as to the Eighth Amendment claim of deliberate indifference.[5]

**Failure to State a Stigma-Plus Due Process Claim[6]**

The United States Supreme Court and the Second Circuit have recognized a protected liberty interest in being free from a false stigmatizing statement that alters a person's legal status or rights in a tangible manner. *See Vitek v. Jones*, 445 U.S. 480, 493 (1980) (protectable liberty interest implicated by characterizing inmate as mentally ill and transferring him to mental hospital for mandatory behavior modification as a treatment for mental illness without due process). In *Vega v. Lantz,* 596 F.3d 77 (2d Cir. 2010), the Second Court noted that wrongly classifying an inmate as a sex offender can be stigmatizing. *Id.* at 81-82 ("it continues to be the case that wrongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest") (citing cases). In *Vega*, the plaintiff challenged his classification to a sex treatment needs score of 3, the same score assigned to Fonck. *Id.* at 80.

To prevail on a "stigma plus" claim, Fonck must establish two distinct elements: "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false [the stigma], and (2) a material state-

---

[5] Defendant Lugo also submitted an Affidavit that she did not leave a copy of the OAP on the Plaintiff's bunk. This fact was deemed admitted when Fonck failed to file any opposition to the motion for summary judgment and did not file a Statement of Material facts pursuant to Local Rule 56(a)2. As such, nor is there a genuine issue of material fact left to be tried with respect to the merits of the deliberate indifference claim against Defendant Lugo.

[6] Although the motion for summary judgment can be and is granted on the basis that Fonck failed to exhaust his administrative remedies, the Court also addresses the merits of the claim that Fonck cannot establish a "stigma plus" due process claim because, in the alternative, it too is dispositive.

imposed burden or state-imposed alteration of the plaintiff's rights or status [the plus]." *Id.* at 81 (internal quotation marks and citation omitted). The plus element must involve "specific and adverse action [by the state defendant] clearly restricting the plaintiff's liberty." *Velez v. Levy*, 401 F.3d 75, 87-88 (2d Cir. 2005) (citations omitted). Thus, allegations that might be "sufficient to demonstrate a government-imposed stigma, absent more," do not rise to the level of a "deprivation of a liberty or property interest protected by due process." *Vega*, 596 F.3d at 81–82 (citations omitted); *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) ("deleterious effects [flowing] directly from a sullied reputation, standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine.") (internal quotation marks and citation omitted).

The defendants advance a number of arguments that Fonck cannot establish either aspect of his "stigma plus" due process claim. The Court is persuaded that Fonck cannot meet the "plus" prong of the claim and therefore does not address the arguments advanced regarding the "stigma" portion of his claim.

In his verified Amended Complaint Fonck alleges that he was harassed and threatened based on inmates' perception of him as a sexual offender. He has provided no evidence to support this allegation, such as inmate requests seeking staff assistance or requests for medical care or mental health treatment for any harm inflicted. *See Hill v. Donoghue*, 815 F. Supp. 2d 583, 589 (E.D.N.Y. 2011) (rejecting harm to safety as a result of being labeled a "rat" as insufficient to constitute plus because plaintiff was not actually harmed by misinformation).

Fonck also alleges that he was required to participate in a sex offender treatment program. However, he provides no evidence to support this allegation. Indeed, the Defendants have averred under oath that because Fonck refused to sign the OAP, he was not referred for an

assessment to determine what program, if any, would address his needs. This fact is deemed admitted. *See* Local Rule 56(a). Accordingly, this unsupported and disproven allegation does not demonstrate the required "plus" nor raise a genuine issue of material fact regarding same.

Fonck also alleges that he was denied parole, community release and RREC because of his sex treatment needs score. Sex offender treatment can demonstrate the "plus" in a "stigma plus" due process claim, but only when actual participation in a program is mandatory for parole eligibility. *See, e.g., Neal v. Shimoda*, 131 F.3d 818, 830 (9th Cir. 1997) (to satisfy the sigma-plus standard, the offender must be subject to "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility"); *see also Kirby v. Siegelman*, 195 F.3d 1285, 1288 (11th Cir. 1999) (completion of sex offender treatment program was prerequisite for parole eligibility). Here, as discussed above, Fonck was never referred for sex offender treatment. Moreover, completion of any such program was not a precondition for parole eligibility. Indeed, Fonck was considered for parole but denied in May 2017. Am. Compl. Ex. 43, Doc. No. 45-1 at 311. Thus, he was clearly parole eligible despite his classification and even though he did not participate in any sex offender treatment program.

Further, the denial of parole was not based on his sex treatment needs score or due solely to his failure to participate in sex offender treatment. The 2017 decision denying parole listed several reasons for the denial, the first two of which were Fonck's prior poor performance while on community release and the fact that his current offense was committed while he was on probation. *Id.* The decision also stated that "Fonck has not completed the programs listed on his Offender Accountability Program (OAP) which includes work, addiction services, and a Sex

16

Offender treatment program." *Id.* Doc. No. 45-1 at 311. Thus, the failure to participate in sex offender treatment was one of many sound reasons to deny Fonck parole, and the denial cannot therefore establish the "plus" prong of his "stigma plus" due process claim. *See Hernandez v. Washington*, No. 2:16-CV-10854, 2017 WL 1214436, at *7 (E.D. Mich. Jan. 20, 2017*)* (rejecting stigma-plus claim where failure to complete sex offender treatment program was only one reasons for denying parole, not a prerequisite for parole eligibility)*, report and recommendation adopted,* No. 16-10854, 2017 WL 1130090 (E.D. Mich. Mar. 27, 2017).

Fonck further alleges that he was denied community release because of the inaccurate information relied upon in deciding his classification. Am. Compl., Doc. No. 45-1 ¶ 219. He attaches a record which reflects that he was, in fact, denied community release. Am. Compl. Ex. 45, Doc. No. 45-1 at 318. However, that document further reveals that Fonck was denied community release because of the nature of his current offense, his criminal history, and his history of poor performance on community release, parole, and probation. *Id.* Indeed, the DOC has afforded Fonck some form of early release seven times and he was unsuccessful on five of those occasions. Defs.' Mem. Ex. G, Decl. of Parole Supervisor Tara Brooks, Doc. No. 129-10.

Lastly, Fonck alleges that he was denied RREC because of the illegal classification and false statement about his sex treatment needs. Fonck attached to his Amended Complaint a copy of the Risk Reduction Earned Credit Rules, Doc. No. 45-1 at 143-46, which provide that refusal to sign an OAP prevents an inmate from earning RREC. *Id.* at 144 ¶ 11(C). Fonck concedes that he refused to sign his OAP. Thus, to the extent he was denied RREC, his refusal could have been the reason and cannot be the basis for the "plus" portion of his "stigma plus" due process claim.

17

Notwithstanding, as described above, the Defendants have established and it is deemed admitted that Fonck's sex treatment needs score of 3 did not impact his eligibility for RREC and in fact, Fonck received RREC while incarcerated.

Accordingly, there is no genuine issue of material fact remaining to be tried and the Defendants are entitled to judgment as a matter of law on Fonck's "stigma plus" due process claim.[7]

**Conclusion**

The Defendants' motion for summary judgment [**Doc. No. 129**] is **GRANTED** for the reasons stated. The court declines to exercise supplemental jurisdiction over Fonck's state law claim. *See* 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction over state law claims where all federal claims have been dismissed).

The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 9th day of April 2020 at Bridgeport, Connecticut.

/s/
Kari A. Dooley
United States District Judge

---

[7] Having determined that the Defendants are entitled to judgment as a matter of law because Fonck failed to exhaust his administrative remedies and in any event cannot establish a "stigma plus" due process claim, the Court does not take up the additional arguments advanced by the Defendants.